**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6499
E-mail: jpafiti@pomlaw.com
*- additional counsel on signature page -*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| M & M HART LIVING TRUST, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> GLOBAL EAGLE ENTERTAINMENT INC., DAVID M. DAVIS, THOMAS E. SEVERSON JR., and MICHAEL ZEMETRA, <br><br> Defendants | Case No. <br><br><br> **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff M & M Hart Living Trust ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through

1

Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Global Eagle Entertainment Inc. ("Global Eagle" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired common shares of Global Eagle between July 27, 2016 and February 17, 2017, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2.     Global Eagle provides content, connectivity, and digital media solutions for travel industry worldwide. The Company operates through two segments, Connectivity and Content. The Connectivity segment offers Wi-Fi Internet connectivity through Ku-band satellite transmissions. This segment offers specialized network equipment, media applications, and premium content services that allow airline passengers to access in-

2

flight Internet, live television, on-demand content, texting services, shopping, and flight and destination information, as well as real-time data and operations solutions. The Connect segment selects, manages, and distributes wholly-owned and licensed media content, video and music programming, applications, digital advertising solutions, and video games to airline, maritime, and other away-from-home non-theatrical markets.

3.     On July 27, 2016, Global Eagle announced that it had completed its previously announced acquisition of Emergency Markets Communications ("EMC"), a communications services provider to maritime and hard-to-reach land markets.

4.     Global Eagle is headquartered in Los Angeles, California.  The Company's common stock trades on the Nasdaq Capital Market ("NASDAQ") under the ticker symbol "ENT."

5.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Global Eagle was unable to timely and properly account for the EMC acquisition; (ii) consequently, the Company lacked effective internal controls over financial reporting; and (iii) as a result, Global Eagle's financial statements were materially false and misleading at all relevant times.

6.     On February 21, 2017, pre-market, Global Eagle announced that the Company's Chief Executive Officer ("CEO") David M. Davis ("Davis") and Chief

Financial Officer ("CFO") Thomas E. Severson Jr. ("Severson") had resigned from their positions with the Company. Concurrently, Global Eagle announced that it expected to file its Annual Report for fiscal year 2016 after the March 16, 2017 U.S. Securities and Exchange Commission deadline, citing the Company's "increased size and complexity" after its acquisition of Emerging Markets Communications, as well as "its need to transition the finance department after the prior CFO's departure and its need to complete additional financial-closing procedures associated with the Company's material weaknesses in internal control over its financial reporting."

7.     On this news, Global Eagle's share price fell $1.74, or 27.97%, to close at $4.48 on February 21, 2017.

8.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

11.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b).  Global Eagle's principal executive offices are located within this Judicial District.

12.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13.     Plaintiff, as set forth in the accompanying Certification, purchased common shares of Global Eagle at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

14.     Defendant Global Eagle Entertainment Inc. is incorporated in Delaware, and the Company's principal executive offices are located at 4553 Glencoe Avenue, Los Angeles, California 90292.  Global Eagle's common stock trades on the NASDAQ under the ticker symbol "ENT."

15.     Defendant Davis served as the Company's CEO and Director from July 2014 until his resignation effective February 20, 2017.

16.     Defendant Severson served as the Company's CFO from August 2016 until his resignation effective February 20, 2017.

17.     Defendant Michael Zemetra ("Zemetra") served as the Company's CFO from November 2014 until his resignation in August 2016.

18.     The Defendants referenced above in ¶¶ 15-17 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Global Eagle Entertainment Inc. provides content, connectivity, and digital media solutions for travel industry worldwide. The Company operates through two segments, Connectivity and Content. The Connectivity segment offers Wi-Fi Internet connectivity through Ku-band satellite transmissions. This segment offers specialized network equipment, media applications, and premium content services that allow airline passengers to access in-flight Internet, live television, on-demand content, texting services, shopping, and flight and destination information, as well as real-time data and operations solutions. The Connect segment selects, manages, and distributes wholly-owned and licensed media content, video and music programming, applications, digital advertising solutions, and video games to airline, maritime, and other away-from-home non-theatrical markets.

**Materially False and Misleading Statements Issued During the Class Period**

20.    The Class Period begins on July 27, 2016, when Global Eagle issued a press release entitled "Global Eagle Entertainment Completes Acquisition of Emerging Markets Communications."  The press release stated, in part:

> Global Eagle Entertainment Inc. (NASDAQ:ENT) ("GEE") today announced that it has completed its previously announced acquisition of Emerging Markets Communications ("EMC"), a leading communications services provider to maritime and hard-to-reach land markets.
>
> The combination of GEE and EMC creates one of the world's largest providers of satellite-based connectivity and media to the rapidly growing global mobility market.  GEE has established a strong track record of successfully delivering media content and connectivity to airlines, while EMC has become a top provider of connectivity to maritime and hard-to-reach land markets. When combined with EMC, GEE benefits from significant economies of scale and an enhanced global infrastructure that enables it to deliver a comprehensive portfolio of products to customers.
>
> With the combination, GEE possesses unique attributes that will provide additional opportunities to drive revenue growth and operational efficiencies, including:
>
> - An unparalleled portfolio of products and services tailored to mobility markets, including global connectivity, media content in 47 languages, live television, travel and entertainment apps, user interface platforms and data capture and operations analytics tools;
>
> - A global sales force and support organization that reaches all major mobility verticals including aviation, maritime, energy and remote locations;
>
> - A satellite and ground-based network infrastructure that can provide customers connectivity and media across multiple frequency bands anywhere in the world;

7

- Proprietary, patented technologies that enhance the connected traveler's user experience and reduce costs across market verticals;

- A diversified revenue base with over 400 customers, balanced between media and connectivity, and over half of all revenue coming from international markets; and

- Engineering, technical and managerial resources to effectively drive new product development, program management, product maintenance, and field support.

"This is a transformational acquisition for our company and in our industry," said GEE Chief Executive Officer Dave Davis. "The combination of GEE and EMC enables us to provide our customers with a breadth of products and services unmatched in the markets we serve, whether in the air, at sea, or on land. GEE will continue to strive to be customer focused, product driven, and operationally excellent."

<u>Synergy Opportunities</u>

GEE has a successful track record of integrating acquisitions and achieving synergies. With EMC, the Company expects to realize synergies of $15 million in 2017, growing to $40 million in 2018 and thereafter. A major source of savings is expected to come from network efficiencies, including the ability to optimize bandwidth costs through a consolidation of existing network assets, including space segment and ground infrastructure, as well as better capacity utilization. Savings are also expected through reductions in SG&A spending and the consolidation of facilities.

In addition to cost savings, GEE expects the combination to generate significant revenue synergies. Driving sales of GEE's media, software, advertising and operations solutions products in the underserved maritime market are a key objective of the Company. GEE's digital media team has had a long-term relationship with EMC and expects to launch new products to major cruise lines before year-end. EMC's proprietary technologies are in use today to improve the connectivity experience and optimize bandwidth usage in the maritime market. GEE will soon introduce these technologies into the aviation market.

21.     On August 8, 2016, Global Eagle issued a press released and filed a Current Report on Form 8-K with the SEC, announcing certain of the Company's financial and operating results for the quarter and year ended June 30, 2016 (the "Q2 2016 8-K").  For the quarter, Global Eagle reported a net loss of $38.16 million, or $0.49 per diluted share, on revenue of $112.27 million, compared to net income of $12.99 million, or $0.17 per diluted share, on revenue of $102.38 million for the same period in the prior year.

22.     In the Q2 2016 8-K, Global Eagle continued to tout the success of the EMC acquisition, stating, in part:

> With the closing of the EMC acquisition, GEE has expanded its addressable market to include satellite-based connectivity and media solutions to the maritime and hard-to-reach land markets. GEE's revenue base will now be split approximately equally between media content and connectivity sales and it will operate three service lines: Media & Content, Aviation, and Maritime & Land. Media & Content are part of GEE's Content operating segment, and Aviation and Maritime & Land are part of GEE's Connectivity operating segment.
>
> "The acquisition of EMC positions GEE as a leader in supplying satellite-based connectivity and media to the rapidly growing global mobility market," continued [CEO Dave] Davis. "***The integration process is well underway*** as we work towards our goal of $40 million in annual cost synergies in 2018 and thereafter. Further, we've already launched our products into new verticals, such as the installation of GEE's Airtime digital media and Wi-Fi portal onboard an EMC cruise line customer."

(Emphasis added.)

23.     On August 9, 2016, Global Eagle filed a Quarterly Report on Form 10-Q with the SEC, reiterating the financial and operating results previously reported in the

Q2 2016 8-K and reporting in full the Company's financial and operating results for the quarter and year ended June 30, 2016 (the "Q2 2016 10-Q").

24.     The Q2 2016 10-Q contained signed certifications pursuant to the Sarbanes Oxley Act of 2002 ("SOX") by Defendants Davis and Zemetra, stating that the financial information contained in the Q2 2016 10-Q was accurate and disclosed any material changes to the Company's internal controls over financial reporting.

25.     On November 8, 2016, Global Eagle issued a press released and filed a Current Report on Form 8-K with the SEC, announcing certain of the Company's financial and operating results for the quarter and year ended September 30, 2016 (the "Q3 2016 8-K").  For the quarter, Global Eagle reported net income of $19.35 million, or $0.23 per diluted share, on revenue of $146.91 million, compared to a net loss of $6.87 million, or $0.09 per diluted share, on revenue of $110.11 million for the same period in the prior year.

26.     In the Q3 2016 8-K, Global Eagle again highlighted the benefits and the financial implications of the EMC acquisition, stating, in part:

Global Eagle Entertainment Inc. (Nasdaq: ENT) ("Global Eagle", "GEE" or the "Company"), a leading provider of satellite-based connectivity and media to global mobility markets across air, sea and land, today announced financial results for its third quarter ended September 30, 2016.  GEE posted revenue of $146.9 million in Q3 2016, up 33.4% compared to the prior year period, driven by the acquired EMC business and continued growth in the aviation connectivity service line.  The Company generated net income of $19.4 million and Adjusted EBITDA* of $16.7 million during the third quarter of 2016.

"During the quarter, we closed the acquisition of EMC and began the process of integrating our businesses.  Already, our combined company has entered into a new agreement with Intelsat that will greatly increase the capacity of our global network while significantly lowering unit costs.  Further, we've combined the management of our network across all verticals into one group to maximize efficiencies," said Dave Davis, CEO of GEE.  "Also during the quarter, we launched our Airconnect system on Avianca Brasil less than two months after signing the contract and we commenced service on Jet Airways with our AirTime streaming IFE system."

. . .

**<u>Third Quarter 2016 Results Summary</u>**

- Total revenue increased by 33.4% to $146.9 million, driven largely by the acquisition of EMC and continued growth in the aviation connectivity business.  EMC contributed approximately $32 million to quarterly revenue. Our third quarter financials only include two months of operating results for EMC.

- Net income was $19.4 million versus a net loss of $6.9 million in the year ago quarter.  During the quarter, the company recorded a tax benefit of $50.1 million attributable to the partial release of GEE's tax valuation allowance recorded in connection with the EMC acquisition.

- Adjusted EBITDA was $16.7 million.  Approximately $4 million in EMC acquisition-related satellite capacity discounts, which were expected to be realized in Q3, were instead required to be recorded as current assets under purchase accounting. On a pro forma basis, the full third quarter 2016 Adjusted EBITDA for the combined GEE and EMC business was $22.4 million.

- Operating expenses were $71.7 million, versus $42.0 million in the third quarter of 2015. The third quarter 2016 includes non-recurring operating expenses of $22.4 million, which were comprised of $15.3 million of transaction related costs, $5.6 million of integration related expenses and $1.5 million related to legal settlements.

- Capital expenses were $71.7 million, versus $42.0 million in the third quarter of 2015. The third quarter 2016 includes non-recurring

11

operating expenses of $22.4 million, which were comprised of $15.3 million of transaction related costs, $5.6 million of integration related expenses and $1.5 million related to legal settlements.

27. On November 9, 2016, Global Eagle filed a Quarterly Report on Form 10-Q with the SEC, reiterating the financial and operating results previously reported in the Q3 2016 8-K and reporting in full the Company's financial and operating results for the quarter and year ended September 30, 2016 (the "Q3 2016 10-Q").

28. The Q3 2016 10-Q contained signed certifications pursuant to SOX by Defendants Davis and Severson, stating that the financial information contained in the Q3 2016 10-Q was accurate and disclosed any material changes to the Company's internal controls over financial reporting.

29. The statements referenced in ¶¶ 20-28 above were materially false and/or misleading because they misrepresented and/or failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Global Eagle was unable to timely and properly account for the EMC acquisition; (ii) consequently, the Company lacked effective internal controls over financial reporting; and (iii) as a result, Global Eagle's financial statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

30.     On February 21, 2017, pre-market, Global Eagle issued a press release and filed a Current Report on Form 8-K with the SEC, announcing that the Company's CEO, Defendant Davis, and CFO, Defendant Severson, had resigned from their respective positions with Global Eagle, effective February 20, 2017.  Concurrently, Global Eagle advised investors that the Company would be late in filing its Annual Report for 2016, stating, in relevant part:

**10-K Filing Update**

Global Eagle expects to file its Annual Report on Form 10-K for the fiscal year ended December 31, 2016 after the March 16, 2017 U.S. Securities and Exchange Commission deadline. The Company requires additional time to file its Annual Report given its increased size and complexity after the Emerging Markets Communications acquisition and the effect of that size and complexity on its financial reporting processes, its need to transition the finance department after the prior CFO's departure and its need to complete additional financial-closing procedures associated with the Company's material weaknesses in internal control over its financial reporting.

31.     On this news, Global Eagle's share price fell $1.74, or 27.97%, to close at $4.48 on February 21, 2017.

32.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Global Eagle common shares traded on the NASDAQ during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

34.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Global Eagle common shares were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Global Eagle or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

37.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of Global Eagle;

- whether Defendants caused Global Eagle to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Global Eagle securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

38.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively

small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

39.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Global Eagle common shares are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's common shares; and

- Plaintiff and members of the Class purchased and/or sold Global Eagle common shares between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

40.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

41.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

42.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43.     This Count is asserted against Global Eagle and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

44.     During the Class Period, Global Eagle and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

45.     Global Eagle and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Global Eagle common shares during the Class Period.

46.     Global Eagle and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Global Eagle were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of Global Eagle, their control over, and/or receipt and/or modification of Global Eagle allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Global Eagle, participated in the fraudulent scheme alleged herein.

47.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them

18

or other Global Eagle personnel to members of the investing public, including Plaintiff and the Class.

48.     As a result of the foregoing, the market price of Global Eagle common shares was artificially inflated during the Class Period.  In ignorance of the falsity of Global Eagle's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Global Eagle common shares during the Class Period in purchasing Global Eagle common shares at prices that were artificially inflated as a result of Global Eagle's and the Individual Defendants' false and misleading statements.

49.     Had Plaintiff and the other members of the Class been aware that the market price of Global Eagle common shares had been artificially and falsely inflated by Global Eagle's and the Individual Defendants' misleading statements and by the material adverse information which Global Eagle's and the Individual Defendants did not disclose, they would not have purchased Global Eagle's common shares at the artificially inflated prices that they did, or at all.

50.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

51.     By reason of the foregoing, Global Eagle and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages

which they suffered in connection with their purchase of Global Eagle common shares during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

52. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53. During the Class Period, the Individual Defendants participated in the operation and management of Global Eagle, and conducted and participated, directly and indirectly, in the conduct of Global Eagle's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's inadequate internal safeguards in data security protocols.

54. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Global Eagle's financial condition and results of operations, and to correct promptly any public statements issued by Global Eagle which had become materially false or misleading.

55. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Global Eagle disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants

exercised their power and authority to cause Global Eagle to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Global Eagle within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Global Eagle common shares.

56.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Global Eagle.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post- judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

# DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: February 23, 2017

Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6499
E-mail: jpafiti@pomlaw.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Hui M. Chang
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:(212) 661-8665
E-mail: jalieberman@pomlaw.com
E-mail: ahood@pomlaw.com
E-mail: hchang@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ**
**& GROSSMAN, LLC**
Peretz Bronstein (not admitted)
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile (212) 697-7296
Email:  peretz@bgandg.com

***Attorneys for Plaintiff***

22

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.      We, Mary A. Hart and Michael L. Hart, on behalf of M & M Hart Living Trust (the "Trust"), as Trustees, with authority to bind the Trust and enter into litigation on its behalf, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      We have reviewed a complaint against Global Eagle Entertainment Inc. ("Global Eagle" or the "Company") and authorize the filing of a comparable complaint (the "Complaint") on behalf of the Trust.

3.      The Trust did not purchase or acquire Global Eagle securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      The Trust is willing to serve as a representative part on behalf of a class of investors who purchased or acquired Global Eagle securities during the class period as set forth in the Complaint (the "Class Period"), including providing testimony at deposition and trial, if necessary.  We understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      To the best of our current knowledge, the attached sheet lists all of the Trust's transactions in Global Eagle securities during the Class Period.

6.      During the three-year period preceding the date on which this Certification is signed, the Trust has not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      The Trust agrees not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond its pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.      We declare under penalty of perjury that the foregoing is true and correct.

Executed      22 Feb 2017
                    (Date)

_Mary L. Hart Michael Hart_
                              (Signature)

Mary A. Hart   Michael L. Hart
                    (Type or Print Name)
                Joint Trustees

**GLOBAL EAGLE ENTERTAINMENT, INC. (ENT)**                    **M & M Hart Living Trust**

**LIST OF PURCHASES AND SALES**

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 7/14/2016 | Purchase | 2,500 | $7.8180 |
| 7/20/2016 | Purchase | 2,500 | $8.0400 |
| 8/9/2016 | Purchase | 5,000 | $8.4100 |
| 8/19/2016 | Purchase | 5,000 | $8.9600 |
| 8/23/2016 | Purchase | 5,000 | $8.9100 |
| 11/7/2016 | Purchase | 10,000 | $7.9000 |
| 8/2/2016 | Sale | 5,000 | $8.3800 |
| 8/11/2016 | Sale | 5,000 | $8.7700 |
| 10/6/2016 | Sale | 10,000 | $9.1200 |