UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 17-1479 PA (MRWx) | Date | November 2, 2018 |
| Title | M & M Hart Living Trust, et al. v. Global Eagle Entertainment, Inc., et al. | | |

| | |
|---|---|
| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE |

| | | |
|---|---|---|
| Kamilla Sali-Suleyman | N/A | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

**Proceedings:** IN CHAMBERS - COURT ORDER

Before the Court is an unopposed Motion for Preliminary Approval of Class Settlement and Directing Dissemination of Notice to the Class filed by plaintiffs M&M Hart Living Trust and Randi Williams ("Plaintiffs"). (Docket No. 104.) Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. The hearing calendared for November 5, 2018, is vacated, and the matter taken off calendar.

## I. FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs filed this action on February 23, 2017 on behalf of those investors who purchased or otherwise acquired Global Eagle common stock between July 27, 2016, and March 16, 2017, inclusive. (Docket No. 77 ("SAC") ¶ 1.) Plaintiffs allege that Global Eagle Entertainment Inc. ("Global Eagle"), David Davis, and Thomas Severson, Jr. (collectively the "Defendants") violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Securities and Exchange Commission (SEC) Rule 10b-5 promulgated thereunder.

Defendants filed a motion to dismiss Plaintiffs' initial complaint for failure to adequately allege materially false statements, scienter, or loss causation. (See Docket No. 24.) Plaintiffs then filed the First Amended Complaint ("FAC") as a matter of right. (Docket No. 29.) Defendants moved to dismiss the FAC, again asserting that Plaintiffs had failed to adequately plead falsity or scienter. (Docket No. 37.) On August 20, 2017, the Court granted Defendants' motion to dismiss the FAC after finding that the FAC failed to adequately allege actionable statements or scienter. (Docket No. 76.) The Second Amended Complaint ("SAC") was Plaintiffs' third attempt to adequately plead their claims under Sections 10(b) and 20(a), and Defendants moved to dismiss. The Court dismissed Plaintiffs' SAC for the same reasons as it had dismissed the FAC. On November 2, 2017, the Court entered final judgment dismissing Plaintiffs' SAC without leave to amend. On November 30, 2017, Plaintiffs filed a Motion to Amend Judgment accompanied by a proposed third amended complaint, claiming that Plaintiffs discovered previously unavailable evidence. The Court, on January 8, 2018, denied Plaintiffs' Motion to Amend Judgment because the amendment would have been futile.

Plaintiffs then appealed. Plaintiffs filed their Opening Brief, and Defendants filed their Answering Brief. Thereafter, the parties engaged in settlement discussions and entered into a Stipulation of Settlement. The parties then filed a Joint Stipulation to Voluntarily Dismiss Appeal without Prejudice, and the Ninth Circuit dismissed the appeal without prejudice.

In Plaintiffs' unopposed Motion for Preliminary Approval of Class Settlement and Directing Dissemination of Notice to the Class, Plaintiffs request that the Court: (1) grant provisional certification of the Settlement Class, (2) grant preliminary approval of the Stipulation of Settlement, and (3) direct dissemination of notice to the Settlement Class.

## II. ANALYSIS

### A. Class Certification for Settlement Purposes

The parties request that the Court certify a settlement class under Federal Rule of Civil Procedure 23(b)(3). Specifically, Plaintiffs seek certification of the following settlement class:

> all persons or entities, including, without limitation, their beneficiaries, that purchased or otherwise acquired Global Eagle common stock between May 9, 2016 and March 16, 2017 (inclusive)[.]

(Docket No. 103 ("Stipulation") ¶ 1.31.) The class excludes:

> (i) Global Eagle and any of its affiliates during the Class Period (including PAR Investment Partners, L.P. and ABRY Partners and their affiliates and managed investment funds); (ii) the Individual Defendants and any entity in which any Individual Defendant has a controlling interest; (iii) any officers or directors of Global Eagle during or after the Class Period; (iv) any Persons who or which exclude themselves by submitting a request for exclusion that is accepted by the Court; and (v) any members of the immediate families of and the legal representatives, agents, affiliates, heirs, beneficiaries, successors-in-interest, or assigns of any such excluded party in their capacity as such. . . . Also excluded from the Settlement Class are those Persons who timely and validly request exclusion from the Settlement Class pursuant to the Notice of Pendency and Proposed Settlement of Class Action.

(Id.)

To obtain class certification, Plaintiffs must demonstrate that the proposed Settlement Class meets the four requirements of Rule 23(a) and the two requirements of Rule 23(b)(3). See Dukes v.

Wal-Mart Stores, Inc., 603 F.3d 571, 580 (9th Cir. 2010), rev'd on other grounds 131 S. Ct. 795, 178 L. Ed. 2d 530 (2011); Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180, 1186 (9th Cir. 2001). Federal Rule of Civil Procedure 23(a) requires Plaintiffs to demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In addition, Federal Rule of Civil Procedure 23(b)(3) requires the Court to find that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Rule 23 "provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court." Armstrong v. Davis, 275 F.3d 849, 871 n.28 (9th Cir. 2001) (citation omitted).

Where, as here, the parties have reached a settlement agreement prior to class certification, "the court must pay undiluted, even heightened, attention to class certification requirements because, unlike in a fully litigated class action suit, the court will not have future opportunities to adjust the class, informed by the proceedings as they unfold." Alberto v. GMRI, Inc., 252 F.R.D. 652, 658 (E.D. Cal. 2008) (internal citation and quotations omitted). "The parties cannot 'agree to certify a class that clearly leaves any one requirement unfulfilled,' and consequently the court cannot blindly rely on the fact that the parties have stipulated that a class exists for purposes of settlement." Id. (quoting Berry v. Baca, No. CV 01-02069 DDP, 2005 WL 1030248, at *7 (C.D. Cal. May 2, 2005)); see also Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 622 (1997) (observing that nowhere does Rule 23 say that class certification is proper simply because the settlement appears fair).

1. Rule 23(a) Requirements

Rule 23(a) establishes four prerequisites for class action litigation: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. To obtain class certification, "actual, not presumed, conformance with Rule 23(a) [is] . . . indispensable," and the Court conducts a "rigorous analysis" to ensure these requirements are satisfied. General Tel. Co. v. Falcon, 457 U.S. 147, 160–61, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982). This rigorous analysis, as the Ninth Circuit explained in Dukes, "does not mean that a district court must conduct a full-blown trial on the merits prior to certification. A district court's analysis will often, though not always, require looking behind the pleadings, even to issues overlapping with the merits of the underlying claims." Dukes, 603 F.3d at 581 (discussing Falcon, 457 U.S. at 160–61). Thus, while a court at the class certification stage is prohibited from making determinations on the merits that do not overlap with the Rule 23 inquiry, district courts must make determinations that each requirement of Rule 23 is actually met. Id. at 582. Plaintiffs must demonstrate to the Court's satisfaction, and not merely allege, that the suit is appropriate for class resolution. Id.

a. Numerosity

A proposed class meets Rule 23(a)'s numerosity requirement where the class is so numerous that joinder of all members individually is "impracticable." Fed R. Civ. P. 23(a)(1). "No exact numerical cut-off is required; rather, the specific facts of each case must be considered." In re Cooper Cos. Sec. Litig., 254 F.R.D. 628, 634 (C.D. Cal. 2009) (citing General Tel. Co. of Northwest, Inc. v. E.E.O.C., 446 U.S. 318, 330, 100 S. Ct. 1698, 64 L. Ed. 2d 319 (1980)).

Here, while the parties do not know the precise number of members in the proposed settlement class, the Company had over 90 million shares of common stock outstanding as of the end of the Class Period. Therefore, the class likely has hundreds or thousands of members. See In re Applied Micro Circuits Corp. Sec. Litig., No. 01-cv-0649 (KAJB), 2003 WL 25419526, at *2–*3 (S.D. Cal. July 15, 2003) (finding numerosity where the company issued 298 million shares of common stock during the Class Period, so the Court agreed with Lead Plaintiff that the class presumptively had thousands of members); see also In re Biolase, Inc. Sec. Litig., No. SACV131300JLSFFMX, 2015 WL 12697736, at *3 (C.D. Cal. June 5, 2015); Middlesex Ret. Sys. v. Quest Software, Inc., No. CV066863DOCRNBX, 2009 WL 10669638, at *6 (C.D. Cal. Sept. 8, 2009). Accordingly, in light of the size of the Settlement Class, the Court finds that the prosecution and joinder of individual claims would be impracticable.

b. Commonality

The commonality requirement is met if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is construed "permissively." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). All questions of fact and law need not be common; rather, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Id. Commonality requires that the claims of a named plaintiff and all putative class members "depend upon a common contention . . . of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011). "[F]or the commonality requirement to be met, there must only be one single issue common to the proposed class." Haley v. Medtronic, 169 F.R.D. 643, 648 (C.D. Cal. 1996).

Here, Plaintiffs' allegations involve questions of law and fact common to all class members, including: (1) whether Defendants violated federal securities laws by making materially false and misleading statements regarding the business, operations, and management of Global Eagle; (2) whether Defendants knew these statements were false and misleading; (3) whether the prices of Global Eagle securities during the Class Period were artificially inflated because of Defendants' conduct; and (4) to what extent the members of the Class have sustained damages, and the proper measure of damages. See e.g., Biolase, 2015 WL 12697736, at *3. Accordingly, the Court finds that the commonality requirement is met.

c. Typicality

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Representative claims are "typical" if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. However, class representatives "must be able to pursue [their] claims under the same legal or remedial theories as the represented class members." In re Paxil Litigation, 212 F.R.D. 539, 549 (C.D. Cal. 2003). The Ninth Circuit has established that the "purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). Thus, "class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" Id. (quoting Gary Plastic Packaging Corp. v. Merrill Lynch, 903 F.2d 176, 180 (2d. Cir. 1990)).

Plaintiffs purchased Global Eagle common stock within the Class Period, and Plaintiffs and the proposed class members all allegedly suffered the same injury from the decline in market value following Defendants' corrective disclosures. Accordingly, the Court finds that the typicality requirement is met.

d. Adequacy of representation

Rule 23(a) also requires that the representative parties be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate if the named plaintiffs (1) "do not have conflicts of interest with the proposed class" and (2) are "represented by qualified and competent counsel." Dukes, 603 F.3d at 614.

Here, Plaintiffs' counsel appear to be qualified and competent, as this Court previously determined Lead Counsel were qualified to represent the Settlement Class based on their experience litigating securities class actions. (See Docket No. 42.) Moreover, Plaintiffs do not appear to have any conflicts of interest with the members of the proposed classes, nor do Plaintiffs appear to be subject to any unique defenses as to the common questions present in this action. "In the securities fraud litigation context, the Ninth Circuit has stated that no conflict exists when the lead plaintiff's claims and the other class members' claims arise out of the same set of facts. See, e.g., In re Mego Financial Corp. Sec. Litig., 213 F.3d 454, 462 (9th Cir. 2000) (stating, in dicta, that there would be no conflict between Lead Plaintiff and other class members if all class members had purchased in the same period)." Biolase, 2015 WL 12697736, at *4. Plaintiffs' claims arise out of the same set of facts as the proposed class members' claims, and their interests in obtaining a favorable resolution is shared with the class members.

In light of the foregoing, Plaintiffs have satisfied the prerequisites of Rule 23(a).

2. Rule 23(b)(3) Requirements

Rule 23(b)(3) requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon, 150 F.3d at 1022. This analysis requires more than proof of common issues of law or fact. Id. Rather, the common questions must "present a significant aspect of the case [that] can be resolved for all members of the class in a single adjudication." Id. The superiority inquiry requires determination of "whether objectives of the particular class action procedure will be achieved in the particular case." Id. at 1023. Notably, the class action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) (citation omitted).

The predominant question of law or fact at issue in this case is whether Global Eagle made material misrepresentations which artificially inflated its stock price. Therefore, predominance is satisfied. See Amchem, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging . . . securities fraud . . . .").

Moreover, a class action is the superior method of adjudication of this case. In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims. See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1163 (9th Cir. 2001) ("If plaintiffs cannot proceed as a class, some—perhaps most—will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover."). Thus, class certification is the superior method of adjudication.

In light of the foregoing, the Court finds that Plaintiffs have satisfied each requirement for certification of the Settlement Class pursuant to Rule 23(b)(3). Accordingly, the Court hereby certifies, preliminarily and for settlement purposes only, the Settlement Class as defined in the Settlement Agreement.

**B. Fairness of the Proposed Class Settlement**

Rule 23(e) requires a district court to determine whether a proposed class action settlement is "fundamentally fair, adequate, and reasonable." Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003). To make this determination, the Court considers a number of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent

of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. See id. Also, "the settlement may not be the product of collusion among the negotiating parties." Mego, 213 F.3d at 458.

At the preliminary approval stage, some of these factors cannot be fully assessed. Accordingly, a full fairness analysis is unnecessary. See Alberto, 252 F.R.D. at 665. Rather, the Court need only review the parties' proposed settlement to determine whether it is within the permissible "range of possible judicial approval" and, thus, whether the notice to the class and the scheduling of the formal fairness hearing is appropriate. Wright v. Linkus Enters., 259 F.R.D. 468, 472 (E.D. Cal. 2009). "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Hanlon, 150 F.3d at 1027. The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).

1. The amount offered in the Settlement Agreement

The Settlement Agreement includes a Settlement Fund of $1,100,000. Plaintiffs have estimated total damages of $45,000,000, which makes the settlement amount a 2.4% recovery. Plaintiffs have cited to a 2018 report by Cornerstone Research which estimates that the median settlement percentage for Rule 10b-5 cases between 2008 and 2017 was 5.0%. While the Settlement Fund here falls below the median, because the settlement comes after Plaintiffs' case was dismissed with prejudice, the Court finds the settlement amount reasonable under the circumstances.

From this Settlement Fund, Lead Counsel will apply for an award of attorneys' fees in an amount not to exceed 25% of the fund (approximately $275,000) and for reimbursement of its reasonable expenses incurred throughout litigation not to exceed $35,000. See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 981 (E.D. Cal. 2012) (noting that in applying the percentage-of-recovery method, "courts typically set a benchmark of 25% of the fund as a reasonable fee award, and justify any increase or decrease from this amount based on circumstances in the record"). Distribution among the class members will be calculated on a pro rata basis. The parties have proposed a plan of allocation in which class members are compensated based on when they purchased and sold their common stock during the Class Period. (Stipulation, Ex. A-1, at 5–6.)

At this stage of the proceedings, and based on the information presently before it, the Court finds that the amount offered in the Settlement Agreement weighs in favor of preliminary approval.

2. The strength of Plaintiffs' case and the risk, expense, complexity, and likely duration of further litigation; and the extent of discovery completed and the stage of the proceedings

Plaintiffs and Class Counsel claim to have conducted a thorough investigation of the claims asserted in the action and contend that the action involves a number of complex issues that would require substantial efforts by Plaintiffs to prevail. The Settlement Agreement was reached only after the parties had engaged in extensive litigation before this Court—where the Court dismissed Plaintiffs' Second Amended Complaint with prejudice—and briefing before the Ninth Circuit. It therefore appears that the parties have spent a significant amount of time considering the issues and facts in this case and are in a position to determine whether settlement is a viable alternative.

Class Counsel state that any further litigation of this action would be time-consuming, complex, and involve substantial risks to the Settlement Class Members. Plaintiffs have already lost before this Court and would need to be successful in their appeal before getting in front of this Court again to file a Third Amended Complaint. Plaintiffs would then likely face another Motion to Dismiss, and if Plaintiffs' Complaint was to survive, Plaintiffs would then need to engage in extensive discovery, and would need to prevail either on a Motion for Summary Judgment or at trial to obtain relief. Continued litigation would delay payment to the Settlement Class Members and increase the amount of attorneys' fees.

Accordingly, the Court finds that these factors—the risk and likely duration of further litigation, and the stage of the proceedings—favor granting preliminary approval to the Settlement Agreement.

3. The experience and views of counsel

The Court finds that Class Counsel have had sufficient experience with securities class action litigation to appropriately assess the legal and factual issues in this matter and determine whether the Settlement Agreement serves the interests of the Class Members. Class Counsel's belief that the Settlement Agreement is both fair and adequate also weighs in favor of preliminary approval.

4. Collusion between the parties

To determine whether there has been any collusion between the parties, courts must evaluate whether "fees and relief provisions clearly suggest the possibility that class interests gave way to self-interest," thereby raising the possibility that the settlement agreement is the result of overt misconduct by the negotiators or improper incentives for certain class members at the expense of others. Staton, 327 F.3d at 961.

Here, there is no evidence of overt misconduct. On the contrary, it appears that the Settlement Agreement was the product of informed, arms-length negotiations between the parties. The Settlement

Agreement is the product of significant negotiations between the parties which took place only after extensive motion practice before this Court, the action's dismissal with prejudice, and a fully briefed appeal before the Ninth Circuit. Based on the information presently available to it, the Court finds that the Settlement Agreement is the product of non-collusive negotiations.

In light of the foregoing, the Court provisionally finds that the Settlement Agreement is fair, reasonable, and adequate. Thus, preliminary approval of the proposed Settlement Agreement is granted.

**C. Notice to the Class**

Under Federal Rule of Civil Procedure 23(e), this Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Such notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mendoza v. United States, 623 F.2d 1338, 1351 (9th Cir. 1980).

Here, the proposed notice plan submitted by the parties is reasonably calculated to reach the members of the class. Notice will be given through first class U.S. mail "to all members of the Settlement Class who can be identified with reasonable effort" (Stipulation, Ex. A ¶ 10(a)) and publication of a summary notice on the claims administrator's website and in the national edition of Investor's Business Daily. (See id.; Stipulation ¶ 5.2.)

The Notice clearly describes the terms of the Settlement, explains the claims and defenses in the lawsuit, provides instructions for Settlement Class Members to exclude themselves from or object to any part of the Settlement Agreement, explains the terms of the claims release, includes a chart for computing recovery, provides detailed information about the **final fairness hearing on March 4, 2019**, provides contact information for the claims administrator, lead counsel, and defense counsel, and explains attorneys' fees and lead plaintiffs' award provisions, among other things.

The parties agree that notices are to be mailed and published within 14 days from the entry of this Order. (Stipulation, Ex. A ¶ 10(a).) Settlement Class Members will have 60 days from the date on which the claims administrator mails the Class Notice to postmark their claim forms or requests for exclusion. The Court approves Strategic Claims Service to act as claims administrator for settlement purposes only.

The Court finds that these notice methods are reasonably calculated to afford class members an opportunity to present their objections. As such, the parties are ordered to issue settlement notices to the

class that are substantially in the form of those notices submitted for the Court's approval, pursuant to the notice plan set forth in those submissions and the Settlement Agreement.[1/]

## Conclusion

Plaintiffs' Motion for Preliminary Approval of Class Settlement and Directing Dissemination of Notice to the Class is granted. The fairness hearing for final approval of the proposed Settlement Agreement is set for **March 4, 2019 at 1:30 p.m.** A motion for final approval of the Settlement Agreement, as well as any motion for attorneys' fees and costs, shall be filed on or before January 28, 2019.

Any Class Member who wishes to object to the proposed Settlement Agreement must do so in writing. The deadline for filing and service of written objections and/or notices of intent to appear at the fairness hearing is February 11, 2019. The deadline for Plaintiffs and/or Defendants to file any written response to a Class Member's objections is February 18, 2019. Plaintiffs' counsel must also submit any Class Member's written objections to the Court by February 18, 2019.

IT IS SO ORDERED.

[1/] To the extend deadlines in this Order differ from the Stipulation of Settlement, the parties are to follow the deadlines as set forth in this Order.