**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
445 South Figueroa St., 31st Floor
Los Angeles, CA 90071
Tel: 213/985-7290
Fax: 202/333-2121
Email: aapton@zlk.com

*Attorneys for Plaintiff M & M Hart Living Trust,*
*Randi Williams, and Co-Lead Counsel for the Class*

[additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| M & M HART LIVING TRUST, and RANDI WILLIAMS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> GLOBAL EAGLE ENTERTAINMENT INC., DAVID M. DAVIS, and THOMAS E. SEVERSON JR., <br><br> Defendants. | Case No. 2:17-CV-01479-PA-MRW <br><br> CLASS ACTION <br><br> **NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF THE SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Hon. Percy Anderson <br> Date: March 4, 2019 <br> Time: 1:30 p.m. <br> Courtroom: 9A |

PLEASE TAKE NOTICE that, on March 4, 2019 at 1:30 p.m., or as soon thereafter as counsel may be heard, pursuant to an Order of the Court issued on November 2, 2018 Granting Preliminary Approval of Settlement and Directing Dissemination of Notice to the Class (ECF No. 106), at the United States District Court, Central District of California, before the Honorable Percy Anderson, Lead Plaintiff M&M Hart Living Trust and Plaintiff Randi Williams (collectively, "Co-Lead Plaintiffs") (on behalf of themselves and all Settlement Class Members) will move pursuant to Fed. R. Civ. P. 23(e), for an order

certifying the Class, as defined herein, for settlement purposes only, granting final approval of the proposed settlement (the "Settlement"), and approval of the proposed plan of allocation of the proceeds of the Settlement (the "Plan of Allocation"), as set forth in the Stipulation, between Plaintiffs and Global Eagle Entertainment, Inc. ("Global Eagle"), David M. Davis, and Thomas E, Severson Jr.

This motion is supported by the accompanying Memorandum of Points and Authorities in Support; the Declaration of Adam M. Apton dated January 28, 2019 (the "Apton Declaration") and the exhibits filed therewith; the Declaration of Peretz Bronstein dated January 25, 2019 (the "Bronstein Declaration"); the Declaration of Josephine Bravata dated January 25, 2019 (the "Bravata Declaration"); the Stipulation and the exhibits filed therewith; and all other pleadings and papers filed in this action, including a proposed order granting final approval.

Co-Lead Plaintiffs conferred with Defendants prior to filing this motion in accordance with Local Rule 7-3. Defendants do not oppose this motion.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION.................................................................................................. 1

II.   STATEMENT OF FACTS .................................................................................. 2

    A.    Claims and Allegations .............................................................................. 2

    B.    Defendants' Position .................................................................................. 2

    C.    Settlement Negotiations ............................................................................. 3

    D.    Preliminary Approval and Notice .............................................................. 3

III.  ARGUMENT ....................................................................................................... 4

    A.    STANDARDS FOR APPROVAL OF CLASS ACTION SETTLEMENTS  4

    B.    THE SETTLEMENT MEETS THE NINTH CIRCUIT STANDARD FOR APPROVAL .................................................................................................. 6

        1.    The Parties Were Able To Assess The Strengths And Weaknesses Of Their Cases ...................................................................................... 6

        2.    The Settlement Appropriately Balances The Risks Of Litigation And The Benefit To The Class Of A Certain Recovery .............................. 7

        3.    Balancing The Certainty Of An Immediate Recovery Against The Expense And Likely Duration Of Protracted Litigation Favors Settlement ................................................................................................ 9

        4.    The Settlement Amount Supports Approval of the Settlement.......... 10

        5.    The Recommendation of Experienced Counsel Heavily Favors Approval of the Settlement................................................................ 11

        6.    Reaction Of The Class Supports Approval Of The Settlement.......... 12

    C.    THE PLAN OF ALLOCATION IS FAIR AND RESONABLE AND SHOULD BE APPROVED BY THE COURT ........................................... 12

    D.    CERTIFICATION OF THE SETTLEMENT CLASS UNDER FED. R. CIV. P.23 IS APPROPRIATE ........................................................................... 13

        1.    The Class Is Sufficiently Numerous.................................................. 13

        2.    Common Questions Of Law Or Fact Exist ........................................ 14

        3.    Co-Lead Plaintiffs' Claims Are Typical Of Those Of The Class ...... 14

        4.    Co-Lead Plaintiffs Are Adequate Representatives Of The Class ...... 15

        5.    The Requirements Of Rule 23(b)(3) Are Also Satisfied................... 15

    E.    THE NOTICE SATISFIED THE REQUIREMENTS OF DUE PROCESS 16

IV.   CONCLUSION ................................................................................................. 18

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Adoma v. Univ. of Phoenix, Inc.*, No. 10-0059, 2012 U.S. Dist. LEXIS 181281, at *24 (E.D. Cal. Dec. 18, 2012) ................................................................................................ 11

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ........................................ 15, 16

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ...................................... 6, 7

*Daubert v. Merrell Dow Pharms. Inc.,* 509 U.S. 579 (1993) .................................................. 8

*DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 945-47 (10th Cir. 2005) ................................................................................................................ 17

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) ........................................ 11

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) .................................................... 17

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) ............................. 14, 15

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) ................................................................ 7

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ............................. 5, 14, 16

*Hicks v. Morgan Stanley & Co.*, No. 01-10071, 2005 U.S. Dist. LEXIS 24890, at *19 (S.D.N.Y. Oct. 24, 2005) ................................................................................................ 11

*Hughes v. Microsoft Corp.*, No. 98-1646C, 2001 U.S. Dist. LEXIS 5976, at *17 (W.D. Wash. Mar. 21, 2001) ......................................................................................................... 6

*In re Equity Funding Corp. of Am. Sec. Litig.*, 603 F.2d 1353, 1361-62 (9th Cir. 1979)....17

*In re Heritage Bond Litig.*, No. 02-1475, 2005 U.S. Dist. LEXIS 13555, at *11-*12 (C.D. Cal. June 10, 2005) ...................................................................................................... 5, 12

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) ............. 12

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) ............................... 5, 7

*In re Novatel Wireless Secs. Litig.,* No. 08cv1689, 2013 U.S. Dist. LEXIS 16986, *7-*8 (S.D. Cal. Feb. 7, 2013) ..................................................................................................... 8

*In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ........................ 4

*In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378(9th Cir. 1995) ........................................ 6

*In re Skilled Healthcare Group, Inc.,* No. 09-5416, 2011 U.S. Dist. LEXIS 10139, at *11 (C.D. Cal. Jan. 26, 2011) ................................................................................................. 12

*In re THQ Inc. Sec. Litig.*, No. 00-1783, 2002 U.S. Dist. LEXIS 7753, at *9-*10 (C.D. Cal. Mar. 22, 2002) ..................................................................................................... 14, 15, 16

*In re Toyota Motor Corp. Unintended Acceleration Mktg.*, No. 10-2151, 2012 U.S. Dist. LEXIS 183941, at *211 (C.D. Cal. Dec. 28, 2012) .......................................................... 15

*In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D.
251, 256 (C.D. Cal. 1988) ..................................................................................... 16

*In re Warner Commc'ns Sec. Litigation*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) ....9, 11

*Knight v. Red Door Salons, Inc.*, No. 08-01520, 2009 U.S. Dist. LEXIS 11149, at *7 (N.D.
Cal. Feb. 2, 2009) ................................................................................................. 5

*Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973) ......................................... 7

*Linney v. Ala. Cellular P'ship*, No. 96-3008, 1997 U.S. Dist. LEXIS 243000, at *16 (N.D.
Cal. July 18, 1997) ............................................................................................... 5

*Maher v. Zapata Corp.*, 714 F.2d 436, 451 (5th Cir. 1983) .................................. 17

*Mendoza v. United States*, 623 F.2d 1338, 1351-52 (9th Cir. 1980) ..................... 17

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ............... 17

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004) 6, 7,
10, 12

*Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ............................................... 6

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) ......4, 5, 6, 11

*Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658 (S.D.N.Y. 1977) ............... 7

*Rodriguez v. Hayes,* 591 F.3d 1105, 1122 (9th Cir. 2010) .................................... 14

*Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) ...................................... 5

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) ................. 5

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ..................... 5

## STATUTES

Fed. R. Civ. P. 23(a)(1) ......................................................................................... 13

Fed. R. Civ. P. 23(a)(2) ......................................................................................... 14

Fed. R. Civ. P. 23(b)(3)(D) .................................................................................... 16

Fed. R. Civ. P. 23(e) .............................................................................................. 1

Rule 23(b)(3) ......................................................................................................... 15

Rule 23(e)(1)(B) .................................................................................................... 16

1    **I.    INTRODUCTION**

2    Lead Plaintiff M&M Hart Living Trust and Plaintiff Randi Williams ("Co-Lead

3    Plaintiffs") respectfully submit this motion and memorandum for final approval of the

4    Settlement in this action. If approved, Settlement Class Members will receive $1,100,000

5    in cash (the "Settlement Fund"). This amount represents the only realistic, near-term

6    recovery Settlement Class Members could have received in connection with this action (the

7    "Litigation").

8    Co-Lead Plaintiffs pursued Defendants vigorously in this Litigation. Following

9    Global Eagle Entertainment Inc. ("Global Eagle")'s failed acquisition of Emerging Market

10   Communications ("EMC"), Co-Lead Plaintiffs began investigating whether or not

11   Defendants' public statements about the acquisition were false and/or materially

12   misleading. The investigation was thorough and expansive and included, among other

13   things, a review of all of Global Eagle's public records as well as interviews of a number

14   of Global Eagle's former employees. Based upon the information obtained by Co-Lead

15   Plaintiffs and their counsel, Levi & Korsinsky, LLP and Bronstein, Gewirtz & Grossman

16   ("Co-Lead Counsel"), Co-Lead Plaintiffs filed an amended complaint alleging violations of

17   the Securities Act of 1934 seeking to recover damages on behalf of a class of Global Eagle

18   shareholders.

19   Co-Lead Plaintiffs' amended complaint was subject to the Private Securities

20   Litigation Reform Act of 1995 and, accordingly, Co-Lead Plaintiffs' allegations needed to

21   satisfy an exceedingly high pleading standard. In this regard, Co-Lead Plaintiffs were

22   unsuccessful and, even after additional factual investigation and a further amendment, Co-

23   still could not adequately state a claim for relief. Despite drafting two amended complaints

24   and seeking leave to amend a third time (by filing a proposed third amended complaint

25   with the Court), Defendants ultimately succeeded in obtaining a dismissal with prejudice.

26   Co-Lead Plaintiffs appealed the dismissal. It was not until after Co-Lead Plaintiffs

27   filed their opening brief that Defendants broached the subject of settlement. However, at

28   that time, Co-Lead Plaintiffs believed strongly that their claims merited more than the

amount being offered. The parties finally agreed to a settlement in principle after Defendants' filed their answering brief and the parties were able to fully assess all the claims and defenses applicable in the action.

The Stipulation filed in support of the Settlement memorialized the agreement between the parties. Co-Lead Plaintiffs make this motion for the purpose of obtaining final approval of the Settlement, so that this case can be resolved in its entirety once and for all. For the reasons set forth below, Plaintiffs respectfully request that the Court approve the Settlement.

## II.    STATEMENT OF FACTS

### A.    Claims and Allegations

Co-Lead Plaintiffs alleged that Defendants committed securities fraud. In July 2016, Global Eagle acquired Emerging Markets Communications ("EMC"). In the wake of the acquisition, Co-Lead Plaintiffs alleged that Global Eagle suffered from severe control deficiencies. Notwithstanding, Global Eagle and its former Chief Executive and Financial Officers made untrue, overly optimistic statements to investors relating to the progress that Global Eagle had supposedly already achieved in terms of integrating EMC into Global Eagle as well as the synergies that Global Eagle would realize once the integration was completed.

Co-Lead Plaintiffs conducted a thorough investigation into the allegations, including a review of all public statements made by Defendants about the acquisition, an analysis of relevant accounting standards concerning acquisitions and goodwill accounting in particular, and interviews of former employees of Global Eagle in an attempt to obtain proof that Defendants committed intentional wrongdoing. Despite Co-Lead Plaintiffs' best efforts, the Court held that the allegations were insufficient to state a claim for relief under the heightened pleading standards of the Private Securities Litigation Reform Act of 1995.

### B.    Defendants' Position

Defendants have denied and continue to deny all wrongdoing and maintain that their conduct was always proper and in compliance with applicable provisions of law.

Defendants have denied and continue to deny all the claims and contentions alleged by Co-Lead Plaintiffs in this Litigation and deny that they have committed any of the wrongful acts or violations of law that are alleged in the Litigation, including that they made any material misrepresentations or omissions. Defendants expressly have denied and continue to vigorously deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Litigation.

### C.    Settlement Negotiations

Settlement negotiations began in earnest once Co-Lead Plaintiffs appealed the Court's decision to dismiss their claims with prejudice. After filing their opening brief on April 30, 2018, Defendants approached Co-Lead Plaintiffs with an offer to settle. Co-Lead Plaintiffs, at that time, believed that their claims were strong enough to warrant a settlement greater than the one being offered by Defendants. Accordingly, briefing on the appeal continued.

Following Defendants' answering brief, the parties revisited settlement negotiations. It was at that time that the parities came to an agreement in principle to resolve the Litigation. With each party presenting its best case in the appellate briefing, the two sides were able to properly evaluate the claims and defenses and agree on a settlement amount. However, as Co-Lead Plaintiffs insisted, any settlement would have to be confirmed with discovery. Defendants provided this discovery prior to the execution of the Stipulation. The discovery included memoranda written by Global Eagle's finance and accounting teams that described the company's actions with regard to impairing its goodwill. This discovery validated Co-Lead Plaintiffs' beliefs with respect to the reasonableness and adequacy of the Settlement.

### D.    Preliminary Approval and Notice

On November 2, 2018, this Court approved Plaintiffs' unopposed motion for preliminary approval, setting a fairness hearing for final approval on March 4, 2019. ECF

No. 106. This order also approved Plaintiffs' submitted schedule for dissemination of notice to class members. *Id.*

Since receiving preliminary approval, Strategic Claims Services (the "Claims Administrator" or "SCS") has published notice and disseminated approximately 7,500 copies of the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") and the Proof of Claim and Release ("Proof of Claim"), (together, the Notice and Proof of Claim are referred to herein as the "Notice Packet"). Bravata Declaration at ¶6. Furthermore, the website (https://www.strategicclaims.net/globaleagle/) provides potential Class members with the pertinent deadlines of the settlement proceeding (*i.e.*, deadlines to request exclusion, object, and submit claims) as well as all pertinent settlement documents (*i.e.*, the Preliminary Approval Order, Notice Packet, and Summary Notice). *Id.* at ¶7. Also on November 19, 2018, the Claims Administrator caused the Summary Notice of the Settlement to be published in the national edition of *Investor's Business Daily*. *Id.* at ¶9. In response to the notice provided by the Claims Administrator, there have been no requests for exclusion or objections to the Settlement as of January 25, 2019. *Id.* at ¶¶12, 13.

Plaintiffs' Counsel and the Claims Administrator continue to provide notice to the Class. In accordance with the Preliminary Approval Order, the Claims Administrator will file a final affidavit attesting to the proper mailing and publishing of notice of the settlement.

## III.   ARGUMENT

### A.   STANDARDS FOR APPROVAL OF CLASS ACTION SETTLEMENTS

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome and the typical length of the litigation. *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (citing *Officers for Justice*, 688 F.2d at 625). "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class

action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

In approving a proposed settlement of a class action under Rule 23(e), the court must find that the proposed settlement is fundamentally fair, adequate, and reasonable. *Knight v. Red Door Salons, Inc.*, No. 08-01520, 2009 U.S. Dist. LEXIS 11149, at *7 (N.D. Cal. Feb. 2, 2009) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)). The Ninth Circuit has provided a list of factors which may be considered in evaluating the fairness of a class action settlement:

> Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of Plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625; *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

Therefore, "[a] settlement should be approved if it is fundamentally fair, adequate and reasonable." *Torrisi*, 8 F.3d at 1375. This ultimate decision is in the "sound discretion of the district courts [which] appraise[s] the reasonableness of particular class-action settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986). A presumption of fairness arises where: (1) counsel is experienced in similar litigation; (2) settlement was reached through arms'-length negotiations; and (3) investigation is sufficient to allow counsel and the court to act intelligently. *In re Heritage Bond Litig.*, No. 02-1475, 2005 U.S. Dist. LEXIS 13555, at *11-*12 (C.D. Cal. June 10, 2005) (citing *Linney v. Ala. Cellular P'ship*, No. 96-3008, 1997 U.S. Dist. LEXIS 243000, at *16 (N.D. Cal. July 18, 1997), *aff'd,* 151 F.3d 1234 (9th Cir. 1998)). Therefore, in exercising its

discretion, the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. *Officers for Justice*, 688 F.2d at 625. As explained below and in the Apton Declaration, the application of these criteria to the Settlement supports its approval by the Court.

Moreover, in reviewing this Settlement under Rule 23, the Court should not substitute its business judgment for that of counsel who litigated the case. *See, e.g.*, *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004). Rather, the settlement should be approved if it is within a "range of reasonableness." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). Thus "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *see also Nat'l Rural*, 221 F.R.D. at 528. The presumption of reasonableness in this action is fully warranted because the Settlement is the product of arms'-length negotiations, including a mediation under Robert H. Fairbank, followed by additional negotiations between the parties and Mr. Fairbank. *See Hughes v. Microsoft Corp.*, No. 98-1646C, 2001 U.S. Dist. LEXIS 5976, at *17 (W.D. Wash. Mar. 21, 2001) (citing *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378(9th Cir. 1995) (finding mediator's involvement supports settlement approval). Finally, it is the considered judgment of counsel for the parties that this Settlement is a fair, reasonable, and adequate resolution of the litigation. *See Hughes*, 2001 U.S. Dist. LEXIS 5976, at *20-*21.

## B.    THE SETTLEMENT MEETS THE NINTH CIRCUIT STANDARD FOR APPROVAL

### 1.    The Parties Were Able To Assess The Strengths And Weaknesses Of Their Cases

The stage of the proceedings and the amount of information available to both of the parties to assess the strength and weaknesses of their cases is one of the factors which

courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *See Mego*, 213 F.3d at 459; *Lundell v. Dell, Inc.*, No. 05-3970, 2006 U.S. Dist. LEXIS 90990, at *9 (N.D. Cal. Dec. 4, 2006).

Co-Lead Plaintiffs conducted an extensive investigation, including interviews of former employees, obtained and reviewed the extensive record of public documents describing the areas of Global Eagle's business touching upon the allegations in the Complaint, researched the law regarding the claims and defenses asserted, thoroughly explored each side's claims and defenses by way of the briefing on the appeal, and participated in a good faith, arms-length negotiation process. As a result, Co-Lead Plaintiffs had a comprehensive understanding of the strengths and weaknesses of the case and sufficient information to make an informed decision regarding the fairness of the Settlement before presenting it to the Court. *See Mego Fin.*, 213 F.3d at 458.

### 2. The Settlement Appropriately Balances The Risks Of Litigation And The Benefit To The Class Of A Certain Recovery

To determine whether the proposed Settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation against the benefits afforded to Class members and the immediacy and certainty of a substantial recovery. *Mego Fin.*, 213 F.3d at 458; *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd*, 485 F. Supp. at 617. In other words,

> [t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, [i]t has been held proper to take the bird in hand instead of a prospective flock in the bush.

*Nat'l Rural*, 221 F.R.D. at 526; *see also Lundell*, 2006 U.S. Dist. LEXIS 90990, at *9-*10. In the context of approving class action settlements, courts attempting to balance these factors have recognized "that stockholder litigation is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973); *see also Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658 (S.D.N.Y. 1977). Here, a balance of these factors

weighs heavily in support of approval of the Settlement and unquestionably outweighs the otherwise likely possibility that the Class would receive no recovery at all.

The Court already dismissed Co-Lead Plaintiffs' claims with prejudice, and Co-Lead Plaintiffs would have to prevail on appeal just to continue the case. Even if Co-Lead Plaintiffs were successful in that regard, they would have then needed to file an additional amended complaint, defeat another motion to dismiss, engage in extensive discovery, and ultimately prove liability that would have required extensive expert testimony concerning complex accounting issues. As discussed in the accompanying Declaration of Adam M. Apton, a central issue in this case was whether or not Global Eagle properly impaired its goodwill in the context of its acquisition of EMC. That issue, in and of itself, would have proved exceedingly difficult in terms of proving intentional wrongdoing on the part of Defendants As a result of the foregoing, continued litigation would have unquestionably posed substantial risks in establishing liability.

Damages would have also proved difficult to establish. If Co-Lead Plaintiffs prevailed on liability at trial, they would have required an expert to establish damages. Expert testimony is necessary in order to establish the amount – and, indeed, the existence – of actual damages. *See, e.g., In re Novatel Wireless Secs. Litig.,* No. 08cv1689, 2013 U.S. Dist. LEXIS 16986, *7-*8 (S.D. Cal. Feb. 7, 2013). Such an expert evaluation is based not only on stock price history but on other more elusive factors including corporate asset value, cash flow, income and growth prospects for the future, industry and economic trends, the quality of management, the nature and amount of liabilities, and many other variables. At trial, Co-Lead Plaintiffs would likely have faced a motion *in limine* by Defendants to preclude their damage expert's testimony under *Daubert v. Merrell Dow Pharms. Inc.,* 509 U.S. 579 (1993), and risked a decision that the expert's valuation model might not be admissible in evidence. *See In re Novatel,* No. 08-1689, 2013 U.S. Dist. LEXIS 16986, at *12-*15 (ruling inadmissible the plaintiffs' expert testimony concerning damages).

Meanwhile, Defendants would have proffered expert testimony of their own. In such

a "battle of experts," it is impossible to predict with any certainty which arguments would find favor with the jury. *See In re Warner Commc'ns Sec. Litigation*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) (approving settlement where "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad of non-actionable factors such as general market conditions"). Thus, even if Co-Lead Plaintiffs prevailed on the issue of liability, significant additional risks would remain in establishing the existence of damages.

### 3. Balancing The Certainty Of An Immediate Recovery Against The Expense And Likely Duration Of Protracted Litigation Favors Settlement

The immediacy and certainty of a recovery is a factor for the Court to balance in determining whether the proposed Settlement is fair, adequate, and reasonable. *See Heritage*, 2005 U.S. Dist. LEXIS 13555, at *27 ("Settlement of this case has distinct advantages over the speculative nature of litigating this case to a verdict."); *see also Girsh*, 521 F.2d at 157. Courts have consistently held that "[t]he expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *see also Officers for Justice*, 688 F.2d at 626. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural*, 221 F.R.D. at 526.

Approval of the Settlement will mean an immediate recovery for eligible claimants. If not for this Settlement, there would have been years of litigation before Co-Lead Plaintiffs could prevail, if at all. Even if Co-Lead Plaintiffs could prevail on appeal, they would then have to file another complaint, and participate in a lengthy motion to dismiss briefing process. And if Co-Lead Plaintiffs prevailed there, there would then be a lengthy and expensive period of formal discovery, class certification briefing, and summary judgment, the outcome of which is far from certain. Therefore, delay, not just at the trial

stage, but through post-trial motions and the appellate process as well, could force Class members to wait many more years for any recovery, further reducing its value. *See Omnivision*, 559 F. Supp. 2d at 1042 (recognizing the delay and risk inherent in an appeal by defendants and "an immediate and certain award" supports approval of a settlement versus the risk of receiving nothing from continued litigation). Accordingly, settlement of this litigation will ensure a recovery, eliminating the overwhelming risk of no recovery at all. The Settlement is, therefore, in the best interest of the Class.

As the Ninth Circuit has made clear, the very essence of a settlement agreement is compromise, "a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation . . . ." *Id.*; *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 19 (N.D. Cal. 1980) ("[a]s a quid pro quo for not having to undergo the uncertainties and expenses of litigation, the plaintiffs must be willing to moderate the measure of their demands."). Accordingly, the fact that the Class potentially could have achieved a greater recovery after trial does not preclude the Court from finding that the Settlement is within a "range of reasonableness" that is appropriate for approval. *See, e.g., Warner Commc'ns*, 618 F. Supp. at 745.

### 4. The Settlement Amount Supports Approval of the Settlement

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement. However, in balancing, a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class." *Nat'l Rural*, 221 F.R.D. at 526. Balanced against all of the risks outlined above and in the Apton Declaration, Plaintiffs and the Class stand to recover a $1,100,000 cash settlement. Co-Lead Plaintiffs' expert estimated potential recoverable damages for the Class at approximately $45 million. Defendants would undoubtedly have an expert evaluation at significantly less, and usually have an explanation for no damages at all. The Settlement,

therefore, represents 2.4% of the total damages that Co-Lead Plaintiffs' expert estimated could have been recovered if they were completely successful on all issues of liability and damages in the Litigation. While "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair," *Officers for Justice*, 688 F.2d at 628, the percentage recovery is within the range of settlements that have received approval by the courts. *See, e.g., Hicks v. Morgan Stanley & Co.*, No. 01-10071, 2005 U.S. Dist. LEXIS 24890, at *19 (S.D.N.Y. Oct. 24, 2005) (approving settlement representing 3.8% of plaintiffs' estimated damages); *see In re Prudential Sec., Inc. L.P. Litig.*, 1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) (approving settlement of between 1.6% and 5% of claimed damages); *In re Cendant Corp. Litig.*, 264 F.3d 201, 240 (3d. Cir. 2001) (typical recoveries in securities class actions range from 1.6% to 14% of total losses).[1]

### 5. The Recommendation of Experienced Counsel Heavily Favors Approval of the Settlement

Highly experienced counsel, negotiating at arm's length, have weighed the factors discussed above and endorse the Settlement. "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Adoma v. Univ. of Phoenix, Inc*., No. 10-0059, 2012 U.S. Dist. LEXIS 181281, at *24 (E.D. Cal. Dec. 18, 2012); *see also Ellis*, 87 F.R.D. at 18. In approving a settlement, courts often focus on the "negotiating process by which the settlement was reached." *Warner Commc'ns.*, 618 F. Supp. at 741. Here, the parties engaged in arms'-length negotiations, after Co-Lead Plaintiffs conducted a lengthy investigation and briefed a near-full appellate record, before Settlement was ultimately reached. "[T]he fact that the settlement agreement was reached in arm's length negotiations . . . create[s] a presumption that the agreement is fair." *In re Immune Response Sec. Litig.*,

---

[1] *See also Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) (noting that there is no reason, at least in theory, why a satisfactory settlement could not amount to a "hundredth or even a thousandth of a single percent of the potential recovery").

497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007).

### 6.  Reaction Of The Class Supports Approval Of The Settlement

It is established that the absence of a large number of objectors to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members. *See In re Skilled Healthcare Group, Inc.,* No. 09-5416, 2011 U.S. Dist. LEXIS 10139, at \*11 (C.D. Cal. Jan. 26, 2011) ("In this case, the Court interprets the lack of anything other than a de minimus objection as ratification of the settlement terms by the class."); *see also Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at \*34; *Nat'l Rural*, 221 F.R.D. at 528. The Claims Administrator disseminated over 7,500 Notice Packets to potential Class members, published the Summary Notice in the national edition of *Investor's Business Daily*, and maintained website to field Global Eagle shareholder questions. Bravata Decl. at ¶¶7, 9. As of January 25, 2019, there have been no requests for exclusion or objections to the Settlement. *Id*. at ¶¶12, 13.

### C.   THE PLAN OF ALLOCATION IS FAIR AND RESONABLE AND SHOULD BE APPROVED BY THE COURT

Assessment of a plan of allocation of settlement proceeds in a class action under Fed. R. Civ. P 23 is governed by the same standards of review applicable to the settlement as a whole: the plan must be fair, reasonable, and adequate. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *In re Omnivision Tech*., 559 F. Supp. 2d at 1045. "However, an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Heritage*, 2005 U.S. Dist. LEXIS 13555, at \*38. There is no requirement that a settlement must benefit all class members equally. *See Mego*, 213 F.3d at 461; *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (upholding distribution plan where class members received different levels of compensation and finding that no subgroup was treated unfairly); *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1437 (D.S.C. 1990) (approving settlement where some class members did not share in recovery). These decisions acknowledge that the goal of a distribution plan is fairness to the class as a whole, taking into account the various

disclosures during the Class Period and establishing a claim value based on the market's reaction to each new piece of information.

In order to develop a fair distribution plan, Co-Lead Counsel developed the Plan of Allocation based on the damages analysis and distribution of estimated damages rendered by Co-Lead Plaintiffs' damages expert earlier in the litigation. This analysis was, at the time the Settlement was reached, the best estimate of damages that Co-Lead Plaintiffs had and is still the analysis that Co-Lead Plaintiff would likely have presented to the trier of fact. The Plan of Allocation, of course, like Co-Lead Plaintiffs' estimate of Class-wide damages itself, assumes complete success on all aspects of liability and damages at trial and post-trial appeals. Thus, the Plan of Allocation credits all Class members with the best possible result they could have achieved based on the number of Global Eagle shares they purchased, their cost basis in those shares, and the timing of their purchases and sales of Global Eagle securities. Shaping each class member's recovery around these factors is only fair. *Skilled Healthcare*, 2011 U.S. Dist. LEXIS 10139 at *12.

Based upon the foregoing, Co-Lead Plaintiffs and their counsel submit that the Plan of Allocation will equitably apportion the net Settlement proceeds among all eligible Class members using the principles set forth in the case law cited above, and should be approved.

**D.    CERTIFICATION OF THE SETTLEMENT CLASS UNDER FED. R. CIV. P.23 IS APPROPRIATE**

Because the Settlement was reached before the class certification stage, Defendants have agreed to certification of the Class for settlement purposes. Rule 23 provides that an action may be maintained as a class action if each of the four prerequisites of Rule 23(a) is met and, in addition, the action qualifies under one of the subdivisions of Rule 23(b). Although certification of the Class is requested solely to effectuate the Settlement, as set forth below, all of the requirements of Rule 23 are easily met.

**1.    The Class Is Sufficiently Numerous**

Rule 23(a) first requires that the proposed class be so numerous that joinder of all members is difficult or impracticable. Fed. R. Civ. P. 23(a)(1). Here, joinder is certainly

impracticable. *See In re THQ Inc. Sec. Litig.*, No. 00-1783, 2002 U.S. Dist. LEXIS 7753, at *9-*10 (C.D. Cal. Mar. 22, 2002). While the precise number of Global Eagle shareholders is unknown, the Claims Administrator sent over 7,500 Notice Packets to potential Class members. Bravata Decl. at ¶6. Accordingly, Co-Lead Plaintiffs believe there are thousands of members in the Class, which easily satisfies numerosity.

### 2.      Common Questions Of Law Or Fact Exist

Rule 23(a)(2) requires that there be "questions of law or fact common to the [members of the] class." Fed. R. Civ. P. 23(a)(2). It is well established that the commonality requirement is satisfied if the claims of the prospective class share even one central question of fact or law. *See Rodriguez v. Hayes,* 591 F.3d 1105, 1122 (9th Cir. 2010); *Hanlon*, 150 F.3d at 1019-1020. Accordingly, common questions of law and fact exist in this action such that certification as a class action is appropriate. The common questions of law and fact here are overwhelming and include: whether Defendants' alleged acts violated the federal securities laws; whether Defendants participated in and pursued the common course of conduct complained of herein; whether documents, SEC filings, press releases and other statements disseminated to the investing public and Global Eagle stockholders during the Class Period misrepresented material facts about Global Eagle's internal controls; whether the market prices of Global Eagle's common stock during the Class Period were artificially inflated due to material misrepresentations and the failure to correct the material misrepresentations complained of herein; and to what extent the members of the Class have sustained damages and the proper measure of damages.

### 3.      Co-Lead Plaintiffs' Claims Are Typical Of Those Of The Class

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). As Co-Lead Plaintiffs' claims arise from the same course of conduct and are predicated on the same legal theories as the claims of all other Class members, these claims easily satisfy the typicality requirement of

Rule 23(a).

### 4. Co-Lead Plaintiffs Are Adequate Representatives Of The Class

The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "Representation is fair and adequate if (1) the named plaintiff and his counsel are able to prosecute the action vigorously and (2) the named plaintiff does not have conflicting interests with the unnamed class members." *In re Toyota Motor Corp. Unintended Acceleration Mktg.*, No. 10-2151, 2012 U.S. Dist. LEXIS 183941, at *211 (C.D. Cal. Dec. 28, 2012); *Ellis*, 657 F.3d at 985. "The Ninth Circuit has found representation adequate where (1) counsel for the class is qualified and competent, (2) the representatives' interests are not antagonistic to those of the absent class members, and (3) it is unlikely that the action is collusive." *THQ*, 2002 U.S. Dist. LEXIS 7753, at *20.

Here, there are no conflicts between Co-Lead Plaintiffs and absent Class members. Co-Lead Plaintiffs are adequate as demonstrated by the fact that they have retained experienced counsel to bring this action against Defendants. Thus, Co-Lead Plaintiffs have clearly shown that they are more than adequate as a representative for the Class. Moreover, Co-Lead Counsel are nationally recognized class action law firms, which have been appointed as lead counsel in this and numerous other securities class actions. Accordingly, both Plaintiffs and Plaintiffs' Counsel are more than adequate to represent the Class.

### 5. The Requirements Of Rule 23(b)(3) Are Also Satisfied

Rule 23(b)(3) authorizes certification where, in addition to the prerequisites of Rule 23(a), common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication. *Amchem*, 521 U.S. at 591-94. The action easily meets Rule 23(b)(3)'s requirements. "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625. In analyzing whether common questions predominate, the Court must evaluate whether proving the elements of the Co-Lead Plaintiffs' claims can be done through common questions of fact or law, or whether the proof will be

overwhelmed with individual issues. *See Hanlon*, 150 F.3d at 1022.

Courts generally find that securities fraud class actions easily satisfy the predominance requirement. *See THQ*, 2002 U.S. Dist. LEXIS 7753, at *30 ("Plaintiffs' claim – which is based on a series of misrepresentations and market manipulations – clearly satisfies the requirement that common questions predominate over those affecting individual members.") (citing *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988)). In this case, the common questions of law and fact identified above predominate because the proof for the claims of misrepresentation, materiality, reliance and Defendants' scienter are all based on a common nucleus of facts and common course of conduct.

The second prong of Rule 23(b)(3) is essentially satisfied by the Settlement itself. As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." 521 U.S. at 620. Thus, any manageability problems that may have existed here - and Co-Lead Plaintiff knows of none - are eliminated by the Settlement. Accordingly, it is appropriate to certify this litigation as a class action.

## E.   THE NOTICE SATISFIED THE REQUIREMENTS OF DUE PROCESS

Rule 23(e)(1)(B) requires the Court to direct notice in a reasonable manner to all Class members who would be bound by a proposed settlement, voluntary dismissal, or compromise. The notice procedure seeks to reach the greatest number of Class members possible. Pursuant to the Preliminary Approval Order, the Claims Administrator disseminated over 7,500 Notice Packets to potential Class members and nominees. Bravata Decl. at 6. In addition, the Claims Administrator published the Summary Notice in the national edition of *Investor's Business Daily* on November 19, 2018 and maintained a website to field Global Eagle shareholder questions. Bravata Decl. at ¶¶7, 9. As of January 25, 2019, there have been no requests for exclusion or objections to the Settlement. Bravata

Decl. at 12, 13. This notice program was clearly "the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974), and meets the requirements of Fed. R. Civ. P. 23(c) and (e) and due process. *See, e.g.*, *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 945-47 (10th Cir. 2005) (finding notice program akin to the instant one satisfied due process); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (notice need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

The Notice was also clearly sufficient with respect to its content. *See Maher v. Zapata Corp.*, 714 F.2d 436, 451 (5th Cir. 1983) (notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them . . . ."). Courts have repeatedly sustained notices in cases where the notice included only very general information. *See, e.g.*, *In re Equity Funding Corp. of Am. Sec. Litig.*, 603 F.2d 1353, 1361-62 (9th Cir. 1979); *Mendoza v. United States*, 623 F.2d 1338, 1351-52 (9th Cir. 1980).

Here, the Notice detailed the Settlement and the releases that would be exchanged; summarized the history of the litigation; described the parties and the Class; discussed the settlement negotiations; detailed the Plan of Allocation; detailed the maximum amount that Co-Lead Counsel would seek in attorneys' fees and reimbursement of expenses for prosecuting the action; described Class members' right to request exclusion from the Class or appear through personal counsel of their choosing and/or to object to the Settlement, Plan of Allocation and/or request for attorneys' fees and reimbursement of expenses, the deadlines for asserting these rights and procedures for doing so; and provided addresses, a toll-free telephone number, and a website where Class members could obtain additional information. The Notice also contained a statement of the average per share amount that the Settlement represents to the total number of damaged shares in the Class; a statement that there is no agreement on the amount of damages; identification of the attorneys for the

Class; and the reasons for the Settlement. Accordingly, the notice to the Class met all requirements of Rule 23(c) and (e), 15 U.S.C. §78u-4(a)(7) of the PSLRA, and due process.

## IV.    CONCLUSION

For the reasons set forth above and in the accompanying declarations, Co-Lead Plaintiffs submit that: the Settlement is fair, reasonable and adequate, meets the most stringent requirements for Court approval under Rule 23(e), and it should be approved by the Court; the Plan of Allocation is fair and equitable and should be approved; and the Class meets all of the requirements of Fed. R. Civ. P. 23(a) and (b)(3), and it should receive final certification.

Respectfully submitted,

Dated: January 28, 2019          **LEVI & KORSINSKY, LLP**


/s/ Adam M. Apton
Adam M. Apton (SBN 316506)
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Tel: (213) 985-7290
Fax: (202) 333-2121
Email: aapton@zlk.com

-and-

**LEVI & KORSINSKY, LLP**
Nicholas I. Porritt (DC 457611) (NY 2798460)
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 333-2121
Email: nporritt@zlk.com

-and-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BRONSTEIN, GEWIRTZ & GROSSMAN**
Shimon Yiftach (SBN 277387)
1925 Century Park East, Suite 1990
Los Angeles, CA 90067
Tel: 424/322-0322
Fax: 212/697-7296
Email: shimony@bgandg.com

*Attorneys for Plaintiff M & M Hart Living Trust,*
*Randi Williams, and Lead Counsel for the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2019, I caused the foregoing NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF THE SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF ADAM M. APTON; DECLARATION OF PERETZ BRONSTEIN; and DECLARATION OF JOSEPHINE BRAVATA to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List generated by the CM/ECF system.

 s/ Adam M. Apton   
Adam M. Apton