UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-1479 PA (MRWx) | Date | March 4, 2019 |
|---|---|---|---|
| Title | M & M Hart Living Trust, et al. v. Global Eagle Entertainment, Inc., et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Kamilla Sali-Suleyman | Phyllis Preston | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Adam Marc Apton<br>Shimon Yiftach | James G. Kreissman |

**Proceedings:** MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES [107] [108]

Before the Court are an unopposed Motion for Final Approval of Class Action Settlement (Docket No. 107) and an unopposed Motion for Attorneys' Fees and Costs (Docket No. 108) filed by plaintiffs M&M Hart Living Trust and Randi Williams ("Plaintiffs"). A Fairness Hearing was held on March 4, 2019.

**I. FACTUAL & PROCEDURAL BACKGROUND**

Plaintiffs filed this action on February 23, 2017 on behalf of those investors who purchased or otherwise acquired Global Eagle common stock between July 27, 2016, and March 16, 2017, inclusive. (Docket No. 77 ("SAC") ¶ 1.) Plaintiffs allege that Global Eagle Entertainment Inc. ("Global Eagle"), David Davis, and Thomas Severson, Jr. (collectively the "Defendants") violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Securities and Exchange Commission (SEC) Rule 10b-5 promulgated thereunder.

Defendants filed a motion to dismiss Plaintiffs' initial complaint for failure to adequately allege materially false statements, scienter, or loss causation. (See Docket No. 24.) Plaintiffs then filed the First Amended Complaint ("FAC") as a matter of right. (Docket No. 29.) Defendants moved to dismiss the FAC, again asserting that Plaintiffs had failed to adequately plead falsity or scienter. (Docket No. 37.) On August 20, 2017, the Court granted Defendants' motion to dismiss the FAC after finding that the FAC failed to adequately allege actionable statements or scienter. (Docket No. 76.) The Second Amended Complaint ("SAC") was Plaintiffs' third attempt to adequately plead their claims under Sections 10(b) and 20(a), and Defendants moved to dismiss. The Court dismissed Plaintiffs' SAC for the same reasons as it had dismissed the FAC. On November 2, 2017, the Court entered final judgment dismissing Plaintiffs' SAC without leave to amend. On November 30, 2017, Plaintiffs filed a Motion to Amend Judgment accompanied by a proposed third amended complaint, claiming that Plaintiffs discovered previously unavailable evidence. The Court, on January 8, 2018, denied Plaintiffs' Motion to Amend Judgment because the amendment would have been futile.

Plaintiffs then appealed. Plaintiffs filed their Opening Brief, and Defendants filed their Answering Brief. Thereafter, the parties engaged in settlement discussions and entered into a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 17-1479 PA (MRWx) | Date | March 4, 2019 |
| Title | M & M Hart Living Trust, et al. v. Global Eagle Entertainment, Inc., et al. | | |

Stipulation of Settlement. The parties then filed a Joint Stipulation to Voluntarily Dismiss Appeal without Prejudice, and the Ninth Circuit granted the Stipulation.

Plaintiffs then filed a Stipulation for Settlement (Docket No. 103) and an unopposed Motion for Preliminary Approval of Class Settlement and Directing Dissemination of Notice to the Class (Docket No. 104), in which Plaintiffs requested that the Court: (1) grant provisional certification of the Settlement Class, (2) grant preliminary approval of the Stipulation of Settlement, and (3) direct dissemination of notice to the Settlement Class. On November 2, 2018, the Court granted provisional certification of the Settlement Class and preliminary approval of the Stipulation of Settlement, and directed the parties to disseminate notice of the Settlement Class. (Docket No. 106.)

The Claims Administrator, Strategic Claims Services, published notice and disseminated approximately 7,500 copies of the Notice of Pendency and Proposed Settlement of Class Action and the Proof of Claim and Release (together, the "Notice Packet") to Class Members. (Bravata Decl. ¶ 6.) The Claims Administrator's website also contained the pertinent deadlines and settlement documents. (Id. ¶ 7.) The Claims Administrator further published notice in the national edition of Investor's Business Daily. (Id. ¶ 9.) There have been no requests for exclusion or objections to the Settlement. (Id. ¶¶ 12, 13.)

Plaintiffs now move for final approval of the Settlement Agreement. In addition, Plaintiffs seek attorneys' fees and reimbursement of expenses.

**II.     FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

    **A.     Class Certification for Settlement Purposes**

The parties request that the Court certify a settlement class under Federal Rule of Civil Procedure 23(b)(3). Specifically, Plaintiffs seek certification of the following settlement class:

> all persons or entities, including, without limitation, their beneficiaries, that purchased or otherwise acquired Global Eagle common stock between May 9, 2016 and March 16, 2017 (inclusive)[.]

(Docket No. 103 ("Stipulation") ¶ 1.31.) The class excludes:

> (i) Global Eagle and any of its affiliates during the Class Period (including PAR Investment Partners, L.P. and ABRY Partners and their affiliates and managed investment funds); (ii) the Individual Defendants and any entity in which any Individual Defendant has a controlling interest; (iii) any officers or directors of Global Eagle during or after the Class Period; (iv) any Persons who or which exclude themselves by submitting a request for exclusion that is accepted by the Court; and (v) any members of the immediate families of and the legal representatives, agents, affiliates,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-1479 PA (MRWx) | Date | March 4, 2019 |
|---|---|---|---|
| Title | M & M Hart Living Trust, et al. v. Global Eagle Entertainment, Inc., et al. | | |

> heirs, beneficiaries, successors-in-interest, or assigns of any such excluded party in their capacity as such. . . . Also excluded from the Settlement Class are those Persons who timely and validly request exclusion from the Settlement Class pursuant to the Notice of Pendency and Proposed Settlement of Class Action.

(Id.)

To obtain class certification, Plaintiffs must demonstrate that the proposed Settlement Class meets the four requirements of Rule 23(a) and the two requirements of Rule 23(b)(3). See Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 580 (9th Cir. 2010), rev'd on other grounds 131 S. Ct. 795, 178 L. Ed. 2d 530 (2011); Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180, 1186 (9th Cir. 2001). Federal Rule of Civil Procedure 23(a) requires Plaintiffs to demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In addition, Federal Rule of Civil Procedure 23(b)(3) requires the Court to find that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Rule 23 "provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court." Armstrong v. Davis, 275 F.3d 849, 871 n.28 (9th Cir. 2001) (citation omitted).

Where, as here, the parties have reached a settlement agreement prior to class certification, "the court must pay undiluted, even heightened, attention to class certification requirements because, unlike in a fully litigated class action suit, the court will not have future opportunities to adjust the class, informed by the proceedings as they unfold." Alberto v. GMRI, Inc., 252 F.R.D. 652, 658 (E.D. Cal. 2008) (internal citation and quotations omitted). "The parties cannot 'agree to certify a class that clearly leaves any one requirement unfulfilled,' and consequently the court cannot blindly rely on the fact that the parties have stipulated that a class exists for purposes of settlement." Id. (quoting Berry v. Baca, No. CV 01-02069 DDP, 2005 WL 1030248, at *7 (C.D. Cal. May 2, 2005)); see also Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 622 (1997) (observing that nowhere does Rule 23 say that class certification is proper simply because the settlement appears fair).

    1.    Rule 23(a) Requirements

Rule 23(a) establishes four prerequisites for class action litigation: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. To obtain class certification, "actual, not presumed, conformance with Rule 23(a) [is] . . . indispensable," and the Court conducts a "rigorous analysis" to ensure these requirements are satisfied. General Tel. Co. v. Falcon, 457 U.S. 147, 160–61, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982). This rigorous analysis, as the Ninth Circuit explained in Dukes, "does not mean that a district court must conduct a full-blown trial on the merits prior to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-1479 PA (MRWx) | Date | March 4, 2019 |
|---|---|---|---|
| Title | M & M Hart Living Trust, et al. v. Global Eagle Entertainment, Inc., et al. | | |

certification. A district court's analysis will often, though not always, require looking behind the pleadings, even to issues overlapping with the merits of the underlying claims." Dukes, 603 F.3d at 581 (discussing Falcon, 457 U.S. at 160–61). Thus, while a court at the class certification stage is prohibited from making determinations on the merits that do not overlap with the Rule 23 inquiry, district courts must make determinations that each requirement of Rule 23 is actually met. Id. at 582. Plaintiffs must demonstrate to the Court's satisfaction, and not merely allege, that the suit is appropriate for class resolution. Id.

        a.     Numerosity

A proposed class meets Rule 23(a)'s numerosity requirement where the class is so numerous that joinder of all members individually is "impracticable." Fed R. Civ. P. 23(a)(1). "No exact numerical cut-off is required; rather, the specific facts of each case must be considered." In re Cooper Cos. Sec. Litig., 254 F.R.D. 628, 634 (C.D. Cal. 2009) (citing General Tel. Co. of Northwest, Inc. v. E.E.O.C., 446 U.S. 318, 330, 100 S. Ct. 1698, 64 L. Ed. 2d 319 (1980)).

Here, while the parties do not know the precise number of members in the proposed settlement class, the Company had over 90 million shares of common stock outstanding as of the end of the Class Period. The Claims Administrator sent out over 7,500 Notice Packets to potential class members. (Bravata Decl. ¶ 6.) Therefore, the class likely has thousands of members. See In re Applied Micro Circuits Corp. Sec. Litig., No. 01-cv-0649 (KAJB), 2003 WL 25419526, at *2–*3 (S.D. Cal. July 15, 2003) (finding numerosity where the company issued 298 million shares of common stock during the Class Period, so the Court agreed with Lead Plaintiff that the class presumptively had thousands of members); see also In re Biolase, Inc. Sec. Litig., No. SACV131300JLSFFMX, 2015 WL 12697736, at *3 (C.D. Cal. June 5, 2015); Middlesex Ret. Sys. v. Quest Software, Inc., No. CV066863DOCRNBX, 2009 WL 10669638, at *6 (C.D. Cal. Sept. 8, 2009). Accordingly, in light of the size of the Settlement Class, the Court finds that the prosecution and joinder of individual claims would be impracticable.

        b.     Commonality

The commonality requirement is met if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is construed "permissively." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). All questions of fact and law need not be common; rather, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Id. Commonality requires that the claims of a named plaintiff and all putative class members "depend upon a common contention . . . of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011). "[F]or the commonality requirement to be met, there must only be one single issue common to the proposed class." Haley v. Medtronic, 169 F.R.D. 643, 648 (C.D. Cal. 1996).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-1479 PA (MRWx) | Date | March 4, 2019 |
|---|---|---|---|
| Title | M & M Hart Living Trust, et al. v. Global Eagle Entertainment, Inc., et al. | | |

Here, Plaintiffs' allegations involve questions of law and fact common to all class members, including: (1) whether Defendants violated federal securities laws by making materially false and misleading statements regarding the business, operations, and management of Global Eagle; (2) whether Defendants knew these statements were false and misleading; (3) whether the prices of Global Eagle securities during the Class Period were artificially inflated because of Defendants' conduct; and (4) to what extent the members of the Class have sustained damages, and the proper measure of damages. See e.g., Biolase, 2015 WL 12697736, at *3. Accordingly, the Court finds that the commonality requirement is met.

   c.   Typicality

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Representative claims are "typical" if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. However, class representatives "must be able to pursue [their] claims under the same legal or remedial theories as the represented class members." In re Paxil Litigation, 212 F.R.D. 539, 549 (C.D. Cal. 2003). The Ninth Circuit has established that the "purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). Thus, "class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" Id. (quoting Gary Plastic Packaging Corp. v. Merrill Lynch, 903 F.2d 176, 180 (2d. Cir. 1990)).

Plaintiffs purchased Global Eagle common stock within the Class Period, and Plaintiffs and the proposed class members all allegedly suffered the same injury from the decline in market value following Defendants' corrective disclosures. Accordingly, the Court finds that the typicality requirement is met.

   d.   Adequacy of representation

Rule 23(a) also requires that the representative parties be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate if the named plaintiffs (1) "do not have conflicts of interest with the proposed class" and (2) are "represented by qualified and competent counsel." Dukes, 603 F.3d at 614.

Here, Plaintiffs' counsel appear to be qualified and competent, as this Court previously determined Lead Counsel were qualified to represent the Settlement Class based on their experience litigating securities class actions. (See Docket No. 42.) Moreover, Plaintiffs do not appear to have any conflicts of interest with the members of the proposed classes, nor do Plaintiffs appear to be subject to any unique defenses as to the common questions present in this action. "In the securities fraud litigation context, the Ninth Circuit has stated that no conflict exists when the lead plaintiff's claims and the other class members' claims arise out of the same set of facts. See, e.g., In re Mego Financial Corp. Sec. Litig., 213 F.3d 454, 462 (9th Cir. 2000) (stating, in dicta, that there would be no conflict between Lead Plaintiff and other class members if all class members had purchased in the same period)." Biolase,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 17-1479 PA (MRWx) | Date | March 4, 2019 |
| Title | M & M Hart Living Trust, et al. v. Global Eagle Entertainment, Inc., et al. | | |

2015 WL 12697736, at *4. Plaintiffs' claims arise out of the same set of facts as the proposed class members' claims, and their interests in obtaining a favorable resolution is shared with the class members.

In light of the foregoing, Plaintiffs have satisfied the prerequisites of Rule 23(a).

  2.  <u>Rule 23(b)(3) Requirements</u>

Rule 23(b)(3) requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." <u>Hanlon</u>, 150 F.3d at 1022. This analysis requires more than proof of common issues of law or fact. <u>Id.</u> Rather, the common questions must "present a significant aspect of the case [that] can be resolved for all members of the class in a single adjudication." <u>Id.</u> The superiority inquiry requires determination of "whether objectives of the particular class action procedure will be achieved in the particular case." <u>Id.</u> at 1023. Notably, the class action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." <u>Valentino v. Carter-Wallace, Inc.</u>, 97 F.3d 1227, 1234 (9th Cir. 1996) (citation omitted).

The predominant question of law or fact at issue in this case is whether Global Eagle made material misrepresentations which artificially inflated its stock price. Therefore, predominance is satisfied. <u>See</u> <u>Amchem</u>, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging . . . securities fraud . . . .").

Moreover, a class action is the superior method of adjudication of this case. In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims. <u>See</u> <u>Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.</u>, 244 F.3d 1152, 1163 (9th Cir. 2001) ("If plaintiffs cannot proceed as a class, some—perhaps most—will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover."). Thus, class certification is the superior method of adjudication.

In light of the foregoing, the Court finds that Plaintiffs have satisfied each requirement for certification of the Settlement Class pursuant to Rule 23(b)(3). Accordingly, the Court hereby certifies, for settlement purposes only, the Settlement Class as defined in the Settlement Agreement.

  **B.**  **Fairness of the Class Settlement**

Rule 23(e) requires a district court to determine whether a proposed class action settlement is "fundamentally fair, adequate, and reasonable." <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 959 (9th Cir. 2003). To make this determination, courts consider a number of factors, including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-1479 PA (MRWx) | Date | March 4, 2019 |
|---|---|---|---|
| Title | M & M Hart Living Trust, et al. v. Global Eagle Entertainment, Inc., et al. | | |

risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. See id. Also, the settlement may not be the product of collusion among the negotiating parties. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000). "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Hanlon, 150 F.3d at 1027. The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).

    1.  The amount offered in the Settlement Agreement

The Settlement Agreement includes a Settlement Fund of $1,100,000. Plaintiffs have an estimated total damages of $45,000,000, which makes the settlement amount a 2.4% recovery. Plaintiffs have cited to a 2018 report by Cornerstone Research which estimates that the median settlement percentage for Rule 10b-5 cases of this size is between 6% and 8%. (Apton Decl. ¶ 27.) While the Settlement Fund here falls below the median, because the settlement comes after Plaintiffs' case was dismissed with prejudice, the Court finds the settlement amount reasonable under the circumstances.

From this Settlement Fund, Lead Counsel have requested an award of attorneys' fees in an amount not to exceed 25% of the fund and for reimbursement of its litigation costs. See infra Section III; Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 981 (E.D. Cal. 2012) (noting that in applying the percentage-of-recovery method, "courts typically set a benchmark of 25% of the fund as a reasonable fee award, and justify any increase or decrease from this amount based on circumstances in the record"). Distribution among the class members will be calculated on a pro rata basis. The parties have a Plan of Allocation in which class members are compensated based on when they purchased and sold their common stock during the Class Period. (Stipulation, Ex. A-1, at 5–6.) The Court finds that the amount offered in the Settlement Agreement weighs in favor of final approval.

    2.  The strength of Plaintiffs' case and the risk, expense, complexity, and likely duration of further litigation; and the extent of discovery completed and the stage of the proceedings

"When evaluating the strength of a case, the Court should evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." De Santos v. Jaco Oil Co., No. 1:14-cv-0738-JLT, 2015 U.S. Dist. LEXIS 93410, at *16 (E.D. Cal. July 17, 2015). Plaintiffs and Class Counsel claim to have conducted a thorough investigation of the facts (including conducting interviews of former employees and reviewing an extensive record of public documents) and of the claims asserted in the action and contend that the action involves a number of complex issues that would require substantial efforts by Plaintiffs to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 17-1479 PA (MRWx) | Date | March 4, 2019 |
| Title | M & M Hart Living Trust, et al. v. Global Eagle Entertainment, Inc., et al. | | |

prevail. The Settlement Agreement was reached only after the parties had engaged in extensive litigation before this Court—where the Court dismissed Plaintiffs' Second Amended Complaint with prejudice—and briefing before the Ninth Circuit. It therefore appears that the parties have spent a significant amount of time considering the issues and facts in this case and are in a position to determine whether settlement is a viable alternative.

Class Counsel state that any further litigation of this action would be time-consuming, complex, and involve substantial risks to the Settlement Class Members. Plaintiffs have already lost before this Court and would need to be successful in their appeal before getting in front of this Court again to file a Third Amended Complaint. Plaintiffs would then likely face another Motion to Dismiss, and if Plaintiffs' Complaint was to survive, Plaintiffs would then need to engage in extensive discovery, and would need to prevail either on a Motion for Summary Judgment or at trial to obtain relief. Continued litigation would delay payment to the Settlement Class Members and increase the amount of attorneys' fees.

Accordingly, the Court finds that these factors—the risk and likely duration of further litigation, and the stage of the proceedings—favor granting final approval to the Settlement Agreement.

   3. <u>The experience and views of counsel</u>

The Court finds that Class Counsel have had sufficient experience with securities class action litigation to appropriately assess the legal and factual issues in this matter and determine whether the Settlement Agreement serves the interests of the Class Members. Class Counsel's belief that the Settlement Agreement is both fair and adequate also weighs in favor of final approval.

   4. <u>Collusion between the parties</u>

To determine whether there has been any collusion between the parties, courts must evaluate whether "fees and relief provisions clearly suggest the possibility that class interests gave way to self-interest," thereby raising the possibility that the settlement agreement is the result of overt misconduct by the negotiators or improper incentives for certain class members at the expense of others. <u>Staton</u>, 327 F.3d at 961.

Here, there is no evidence of overt misconduct. On the contrary, it appears that the Settlement Agreement was the product of informed, arms-length negotiations between the parties. The Settlement Agreement is the product of significant negotiations between the parties which took place only after extensive motion practice before this Court, the action's dismissal with prejudice, and a fully briefed appeal before the Ninth Circuit. The Court finds that the Settlement Agreement is the product of non-collusive negotiations.

   5. <u>Reaction of Class Members to Settlement</u>

Where a settlement agreement enjoys overwhelming support from the class, this lends weight to a finding that the settlement agreement is fair, adequate, and reasonable. <u>Nat'l Rural Telecomms. Coop.</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-1479 PA (MRWx) | Date | March 4, 2019 |
|---|---|---|---|
| Title | M & M Hart Living Trust, et al. v. Global Eagle Entertainment, Inc., et al. | | |

v. DIRECTV, Inc., 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); see also Boyd v. Bechtel Corp., 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding that objections from only 16 percent of the class was persuasive that the settlement was adequate). Class Members were provided notice of the Settlement Agreement pursuant to this Court's order granting the motion for preliminary approval. (Docket No. 106.) There have been no requests for exclusions or objections to the Settlement, which is strong evidence that the Settlement Agreement is fundamentally fair and reasonable.

In light of the foregoing, the Court finds that the Settlement Agreement is fundamentally fair, adequate, and reasonable.

### C. Adequacy of Notice to the Settlement Class

Under Federal Rule of Civil Procedure 23(e), this Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Such notice must be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Klee v. Nissan N. Am., Inc., No. CV 12-08238 AWT (PJWx), 2015 WL 4538426, at *5 (C.D. Cal. July 7, 2015). The notice given in this case was reasonably calculated to reach the Damages Class. The Claims Administrator published notice and disseminated approximately 7,500 copies of the Notice Packet to Class Members. (Bravata Decl. ¶ 6.) The Claims Administrator's website also contained the pertinent deadlines and settlement documents. The Claims Administrator further published notice in the national edition of Investor's Business Daily. (Id. ¶ 9.) The Court therefore concludes that the notice procedures satisfied the requirements of Due Process and Federal Rule of Civil Procedure 23(e).

## III. ATTORNEYS' FEES AND LITIGATION EXPENSES

### A. Attorneys' Fees

The Court is obligated to conduct a careful review of the reasonableness of requested attorneys' fees and costs. See In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1302 (9th Cir. 1994) ("Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs."). Plaintiffs seek $275,000 in attorneys' fees. This constitutes 25% of the Settlement Fund created by the Settlement Agreement. In common fund cases, "where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998). "The percentage method means that the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." Id. The Ninth Circuit has established 25% of the common fund "as a benchmark award for attorney fees." Id.

"The lodestar method can 'confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate . . . .'" In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 945 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 17-1479 PA (MRWx) | Date | March 4, 2019 |
| Title | M & M Hart Living Trust, et al. v. Global Eagle Entertainment, Inc., et al. | | |

2011) (quoting In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 820 (3d Cir. 1995)). Here, according to Class Counsel's professed rates and hours worked, the lodestar calculation would be approximately $538,600. (See Final Approval Mot. 7.) The Class was represented by two firms: Levi & Korinsky and Bronstein, Gewirtz, & Grossman. Levi & Korinsky spent a total of 991.75 hours on this matter, including work from partners (with hourly rates between $635–925 per hour), associates (with hourly rates between $455–495 per hour), and paralegals (with hourly rates of $265 per hour). (Apton Decl. ¶¶ 34–36.) Bronstein, Gewirtz, & Grossman spent a total of 49.9 hours on this case, including work from three attorneys with billing rates between $350 and $800. (Bronstein Decl. ¶ 7.)

Considering the results achieved, the time expended, the risks faced in this litigation, the skill required, the quality of work, the contingent nature of the fee, the financial burden carried by Class Counsel, and awards made in similar cases, as well as the lack of Class Member objection to this fee award, the Court finds that the requested attorneys' fee award is reasonable. The Court therefore grants Plaintiffs' request for $275,000 in attorneys' fees to be awarded from the Settlement Fund.

### B. Litigation Costs

Plaintiffs request $29,534.05 in litigation costs. "Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." In re Media Vision Tech. Sec. Litig., 913 F. Supp. 1362, 1366 (N.D. Cal. 1996). However, expenses that should be considered part of an attorney's overhead, and therefore included within an award of attorneys' fees, should not be characterized as a litigation expense and recovered as a cost item. Id. ("An award of out-of-pocket expenses should be limited to those expenses customarily billed to a fee-paying client."). These costs are itemized in detail in the supporting declarations. (Apton Decl. ¶¶ 40–41.) The Notice to Class Members noted that litigation costs of up to $35,000 could be awarded, and no Class Member objected. Accordingly, the Court awards $29,534.05 in litigation costs.

### Conclusion

For the foregoing reasons, the Court finds that the Settlement Agreement is fundamentally fair, adequate, and reasonable. The Court therefore grants Plaintiffs' Motion for Final Approval of Settlement. The Court also grants Plaintiffs' Motion for Attorneys' Fees and awards $275,000 in fees and $29,534.05 in costs to Class Counsel. Each of these awards and costs are to be paid from the Settlement Fund. The Court will enter a Judgment consistent with this Order and the Settlement Agreement.

IT IS SO ORDERED.

| | : | 3 |
|---|---|---|
| Initials of Preparer | | kss |